## STATE OF CONNECTICUT *v.* JULIO RODRIGUEZ
### (AC 17199)

Lavery, Schaller and Vertefeuille, Js.

Argued September 20—officially released December 14, 1999

*Michael L. Moscowitz*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Robin Lipsky*, assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The defendant, Julio Rodriguez, appeals from the judgment of conviction, rendered after a jury trial, of aiding and abetting murder in violation of General Statutes §§ 53a-8 (a) and 53a-54a. On appeal, the defendant claims that the trial court improperly denied his motion to suppress a written confession that he gave to the police. We affirm the judgment of the trial court.

The trial court found the following facts from evidence adduced at the suppression hearing. On February 15, 1996, Anthony DeJesus was shot to death during the course of a robbery. Approximately two weeks later, Maryanne Terpack, the defendant's pregnant girlfriend, gave Waterbury police a statement that implicated the defendant in the killing. After giving that statement to the police, Terpack was incarcerated at York correctional institution in Niantic as a result of an outstanding warrant.

On March 8, 1996, in the late morning, the defendant, a member of a street gang, was located in Bristol by the police. The defendant voluntarily agreed to return to the Waterbury police station in the company of Sergeant Michael Ricci and Detective Gary Pelosi. When they arrived, the defendant was advised of his constitutional rights orally and in writing. The defendant also signed

an advisement of rights card after demonstrating his proficiency in the English language. The defendant was then questioned by Ricci in an interview room. During the questioning, the defendant admitted his involvement in the murder. At approximately 2 p.m., Ricci started taking the defendant's written statement. The defendant signed the completed statement at approximately 5:15 p.m. After the statement was typed, Ricci called Ismael Santiago, a licensed bail bondsman, and told him that Terpack might need his services. Santiago then came to the police station and spoke briefly with Ricci. Later that evening, Santiago bonded Terpack out of the York correctional institution and took her to the Waterbury police department at her request. The trial court found that Ricci called Santiago out of a humanitarian concern for Terpack because she was pregnant.

The defendant contends that his confession should be suppressed because it was not voluntarily given and was induced by explicit promises that Terpack would be released if he confessed. The defendant's testimony at the suppression hearing contradicted the state's witnesses in every material respect. The defendant testified that he was arrested and handcuffed in Bristol and did not go to the Waterbury police station voluntarily. Further, the defendant testified that he was not given his *Miranda*[1] warnings and did not sign the *Miranda* card until after he gave his statement. The defendant also testified that while he was in the interview room, at least four different detectives went in and out of the room and repeatedly told him that if he did not give a statement, Terpack would never see their child because the state would take the child while she was incarcerated. Also, the defendant testified that the detectives told him in the interview room that if he did give a statement, Terpack would be released and she could

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

meet with him. The defendant further testified that he spoke with the bail bondsman, who told him that he was going to bond Terpack out at the request of the police so that he would make a statement. The defendant testified that the statement he gave the police was a lie, although it was consistent with Terpack's statement, and that he gave the statement only so that his child would not be born in prison and taken by the state.

The trial court, after noting that the testimony of all the state's witnesses contradicted the defendant's version of the events on March 8, 1996, found that the defendant was not credible. The trial court found that, other than Ricci's call to Santiago, the bonding of Terpack was a routine bail arrangement. The trial court found further that Ricci's call to Santiago was gratuitous and not part of a scheme to coerce a confession from the defendant. The trial court concluded that the defendant's statement was given freely and voluntarily after he had been fully advised of his constitutional rights.

"[T]he use of an involuntary confession in a criminal trial is a denial of due process of law." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 327, 696 A.2d 944 (1997). Whether a confession is voluntary and admissible is a question of fact to be decided by the trial court. *State* v. *Schroff*, 206 Conn. 182, 196, 536 A.2d 952 (1988). The trial court's findings with respect to the circumstances surrounding the confession are factual findings that cannot be overturned unless they are clearly erroneous. *State* v. *Correa*, supra, 328–29; *State* v. *Janice*, 20 Conn. App. 212, 216, 565 A.2d 553, cert. denied, 213 Conn. 811, 568 A.2d 795 (1989). "This court cannot retry the facts or reconsider the credibility of [the] witnesses." (Internal quotation marks omitted.) *State* v. *Billie*, 47 Conn. App. 678, 692, 707 A.2d 324 (1998), aff'd, 250 Conn. 172, 738 A.2d 586 (1999). We must, however, conduct an independent examination of the record to determine whether the

trial court's finding with respect to voluntariness is supported by substantial evidence. *State* v. *Correa*, supra, 329; *State* v. *Schroff*, supra, 196.

"In order to be voluntary a confession must be the product of an essentially free and unconstrained choice by the maker. . . . If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of the confession offends due process. . . . The determination of whether a confession is voluntary must be based on a consideration of the totality of the circumstances surrounding it." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 200 Conn. 465, 477, 512 A.2d 189 (1986). "Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep." (Internal quotation marks omitted.) *State* v. *Correa*, supra, 241 Conn. 328. "The state has the burden of proving the voluntariness of the confession by a fair preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Pinder*, 250 Conn. 385, 418, 736 A.2d 857 (1999).

After careful review of the record, we conclude that the state has met its burden of proof. We begin with consideration of the factors set forth in *Correa* as they relate to this case. The defendant, although young, had considerable experience with the criminal justice system and had been arrested several times prior to this arrest. Further, the defendant testified that he was knowledgeable with respect to police interrogations. The trial court found that he was properly advised of his constitutional rights prior to giving his statement. The defendant admitted his involvement in the murder within the first two hours of his detention. The court

found that the interview was not constant, that the defendant had periods of time when he was alone and that all of his comfort needs were attended to.

The trial court's finding of voluntariness is supported by substantial evidence in the record. The defendant's claim that his confession was induced by promises to release his pregnant girlfriend from custody was rebutted by the testimony of all the police officers involved in his questioning and was not corroborated by any of the other witnesses, including Santiago. All of the officers denied making any promise to the defendant that his girlfriend would be released if he gave a confession and further denied that they requested that she be bonded out so that the defendant would give a statement. Santiago also denied that the police asked him to bond Terpack out and denied that he had any conversation with the defendant. Furthermore, Terpack testified that, to the best of her knowledge, Santiago was not working for the police. It is the sole province of the trial court to assess the credibility of witnesses. *W. v. W.*, 248 Conn. 487, 495, 728 A.2d 1076 (1999). On the basis of the totality of the circumstances, we conclude that the trial court's finding that the defendant's statement was given voluntarily and freely was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.