STATE OF CONNECTICUT *v.* JUAN REYES
(AC 23213)

Lavery, C. J., and DiPentima and Stoughton, Js.

Argued November 18, 2003—officially released February 24, 2004

*Cameron R. Dorman*, special public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Victor Carlucci, Jr.*, senior assistant state's attorney, and *David C. Nelson*, certified legal intern, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Juan Reyes, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a), conspiracy to possess narcotics in violation of General Statutes §§ 53a-48 and 21a-279 (a), sale of narcotics by a person who is not drug-dependant in violation of General Statutes § 21a-278 (b), conspiracy to sell narcotics by a person who is not

drug-dependant in violation of §§ 53a-48 and 21a-278 (b), sale of a controlled substance within 1500 feet of a public school in violation of General Statutes § 21a-278a (b), and conspiracy to sell a controlled substance within 1500 feet of a public school in violation of §§ 53a-48 and 21a-278a (b).[1] On appeal, the defendant claims that the trial court improperly (1) admitted into evidence his involuntary statements that were given to the police as a result of allegedly improper threats, coercion and inducements, and (2) refused to allow him to introduce extrinsic evidence relating to a material issue in violation of his state and federal constitutional rights to confrontation and to present a defense.[2]

The jury reasonably could have found the following facts. On January 25, 2001, in a combined effort, members of the federal Drug Enforcement Agency and members of the Hartford police department planned to use an informant to make a controlled purchase of narcotics from the defendant. The officers gave the informant $950 to purchase heroin and then traveled in separate vehicles to a car wash in Hartford.

Upon arrival at the car wash, the informant met the defendant and asked to purchase ten grams of heroin. The defendant made a call to Carlos Romero, his supplier, and the informant put the money in the defendant's vehicle. Romero arrived shortly thereafter, met the defendant, exchanged the money for drugs and left. The defendant handed the informant the drugs. Finally, the informant left the car wash, drove to a prearranged

---

[1] The state concedes that under *State* v. *Howard*, 221 Conn. 447, 460–63, 604 A.2d 1294 (1992), the trial court improperly sentenced the defendant on each conspiracy conviction rather than combining them and sentencing him on only one conviction.

[2] The defendant asserts a violation of our state constitution. In the absence of an independent state constitutional analysis on his part, however, we decline to address state constitutional issues. See *State* v. *Pinder*, 250 Conn. 385, 389 n.4, 736 A.2d 857 (1999).

location and gave Ramon Baez, a detective with the Hartford police department, approximately ten grams of heroin. On April 27, 2001, the defendant was arrested.

After his arrest, during an interrogation, the defendant admitted to the sale of narcotics and explained to detectives how narcotics sales were normally conducted at the car wash. During that time, he was offered food and drink, and was allowed to make telephone calls to his wife and employer. The defendant was read waiver of rights forms in both English and Spanish. He signed both forms. The defendant's statement was not put into writing because the defendant was going to be used as an informant, and the detectives wanted to protect him. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion to suppress his statements to the police. Specifically, the defendant argues that his statement given at the police station was involuntary because (1) the police engaged in coercive conduct, including the use of improper threats, and (2) he was promised a reduction of his bond from surety to nonsurety if he cooperated. The court found that the defendant's confession was voluntary.

After the hearing on the motion to suppress, the court found the following facts. Although his native tongue was Spanish, the defendant was able to speak and to understand the English language. Prior to the commencement of questioning, the defendant was advised of his rights in both English and Spanish. He voluntarily waived his rights.[3] Finally, the court found that the

---

[3] The defendant waived his rights to have an attorney, to remain silent and to terminate the questioning at any time.

police had made no promises, threats or inducements to the defendant.

"[T]he use of an involuntary confession in a criminal trial is a violation of due process. . . . The state has the burden of proving the voluntariness of the confession by a fair preponderance of the evidence. . . . [T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined. . . . The ultimate question is whether the confession is the product of an essentially free and unconstrained choice. . . . If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." (Citations omitted; internal quotation marks omitted.) *State* v. *McColl*, 74 Conn. App. 545, 563–64, 813 A.2d 107, cert. denied, 262 Conn. 953, 818 A.2d 782 (2003).

"The trial court's findings as to the circumstances surrounding the defendant's interrogation and confession are findings of fact . . . which will not be overturned unless they are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 328–29, 696 A.2d 944 (1997). We, however, make a scrupulous examination and "conduct a plenary review of the record in order to make an independent determination of voluntariness." *State* v. *Pinder*, 250 Conn. 385, 421, 736 A.2d 857 (1999). "Under the federal constitution . . . coercive police activity is a necessary predicate to the finding that a confession is not voluntary . . . ." (Internal quotation marks omitted.) *State* v. *James*, 237 Conn. 390, 411, 678 A.2d 1338 (1996).

In support of his claim, the defendant cites the allegedly coercive nature of the police conduct during his interrogation. Specifically, he refers to (1) a statement

made by an officer present during the interrogation that "[he] better tell the truth or [he] was going to do a lot of time in jail" and (2) an allegedly impermissible promise to reduce his bond from a surety bond to a nonsurety bond.

### A

Contrary to the defendant's claim, the court properly concluded that the statement of the officer was not coercive. The conduct and statement of the officer was not of the type that would be expected to overcome the defendant's will. "[A] statement [that an accused's cooperation would be to his benefit] by a law enforcement officer falls *far* short of creating the compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." (Emphasis in original; internal quotation marks omitted.) *State* v. *Pinder,* supra, 250 Conn. 424. Furthermore, merely "[e]ncouraging a suspect to tell the truth . . . does not, as a matter of law, overcome a confessor's will . . . ." (Internal quotation marks omitted.) Id. In the present case, the statement at issue was an attempt to convince the defendant to tell the truth and nothing more. We conclude, therefore, that the officer's conduct could not be said to be coercive.

### B

As to the alleged promise made by the officers, the defendant testified that the police had told him that if he signed the waiver of rights forms, his bond would be reduced from a surety bond to a nonsurety bond. The court found that no promises had been made to the defendant. Moreover, the record discloses that the defendant signed a statement of rights and waiver form that specifically stated that he was making the statement without any promises or threats having been made

to him and that no pressure of any kind had been used against him.

This court defers to the factual findings of the trial court. In the present case, there is a dearth of evidence to support the defendant's claim that there was an impermissible promise made. Furthermore, Baez testified that no promises were made to the defendant, and the court was free to credit his testimony.

Our examination of the record reveals that the court's finding that the defendant's statement was voluntary was not improper. It is within the exclusive province of the fact finder to determine which evidence is credible and which is not. See *State* v. *Rodriguez*, 56 Conn. App. 117, 122, 741 A.2d 326 (1999), cert. denied, 252 Conn. 926, 746 A.2d 791 (2000). In the present case, the court found no evidence of coercive police conduct. The evidence credited by the court established that the defendant knowingly and voluntarily had waived his rights. The defendant has failed to establish coercive police conduct. Under the federal constitution, therefore, the defendant's statements were not given involuntarily. Consequently, we find no error in the court's denial of the defendant's motion to suppress.

II

The defendant next claims that the court improperly excluded extrinsic evidence on a collateral matter. Specifically, the defendant argues that the court improperly excluded evidence that was proffered to impeach the credibility of Baez.

At trial, Baez testified that the defendant's statement was not put in writing because he was going to use the defendant as an informant and did not want the statement to become part of the public record. Baez testified that this was done to protect the defendant. The defendant attempted to proffer testimony tending

to show that Baez' decision not to put the defendant's statement in writing was unnecessary because such written statements generally do not become part of the public record. The defendant claimed that this evidence pertained to the credibility of Baez. The court excluded the evidence, finding that the evidence was extrinsic and was offered to impeach Baez on a collateral matter. Furthermore, the court found that even if it were relevant, such evidence would be barred under § 4-3 of the Connecticut Code of Evidence because it lacked probative value.

At the outset, we note that we will set aside a court's evidentiary ruling only when there has been a clear abuse of discretion. See *State* v. *Aponte*, 249 Conn. 735, 750, 738 A.2d 117 (1999). "A witness may not be impeached by contradicting his or her testimony as to collateral matters, that is, matters that are not directly relevant and material to the merits of the case. . . . Thus, the answer of the witness on cross-examination to a collateral matter is conclusive and cannot be later contradicted. . . . Extrinsic evidence may be admitted, however, if the subject matter of the testimony is not collateral, that is, if it is relevant to a material issue in the case apart from its tendency to contradict the witness. . . . Evidence tending to show the motive, bias or interest of an important witness is never collateral or irrelevant. It may be . . . the very key to an intelligent appraisal of the testimony of the [witness]. . . .

"The determination of whether a matter is relevant or collateral . . . generally rests within the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Colton*, 227 Conn. 231, 247–48, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert.

denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). "Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." *State* v. *Barnes*, 232 Conn. 740, 746–47, 657 A.2d 611 (1995).

The court was in the best position to determine whether the proffered testimony pertained to a collateral matter or whether it was relevant. The court's evidentiary rulings are given great deference precisely because the court was in the best position to hear and to assess the witnesses' testimony in the context of the entire trial. The issue at trial was whether the defendant had sold narcotics. The proffered testimony had no bearing on that issue. The testimony was proffered to contradict Baez' testimony about his decision not to record the defendant's statement in writing. The testimony was insufficient to show any motive, bias or interest on the part of Baez. Consequently, we conclude that there was no abuse of discretion in the court's disallowing the testimony.

At oral argument, the state conceded, as it must, that under *State* v. *Howard*, 221 Conn. 447, 460–63, 604 A.2d 1294 (1992), the court improperly sentenced the defendant separately on each conspiracy count rather than combining them and sentencing him on only one conviction.

The judgment is reversed in part and the case is remanded with direction to combine the conspiracy convictions and for resentencing. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.