TIMOTHY A. CALABRESE *v.* COMMISSIONER OF CORRECTION
(AC 24679)

Lavery, C. J., and DiPentima and McLachlan, Js.

Argued December 8, 2004—officially released March 22, 2005

*Jodi Zils Gagne*, special public defender, for the appellant (petitioner).

*Melissa L. Streeto*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVERY, C. J. The petitioner, Timothy A. Calabrese, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that he received effective assistance of trial counsel in connection with his decision to plead guilty to one count of larceny in the first degree by an ongoing scheme in

violation of General Statutes §§ 53a-121 (b)[1] and 53a-122,[2] and two counts of failing to refund money within ten days of a written request in violation of the Home Improvement Act (act), General Statutes § 20-418 et seq., specifically General Statutes § 20-427 (b) (8).[3] We disagree and, accordingly, affirm the judgment of the habeas court.

The court reasonably could have found the following facts. At all relevant times prior to 1998, the petitioner was a registered home improvement contractor doing business as a sole proprietor under the trade name Watertight Restoration and Roofing. On August 20, 1996, the petitioner entered into a written home improvement contract with James R. Vanacore and Tracy Alia for installation of a roof on their house in Wallingford. Pursuant to that contract, the petitioner was to remove the existing shingles and plywood from their roof and to reshingle it using a style of roofing that he had invented. Specifically, the petitioner was to apply new shingles in an artistic pattern of the homeowner's choosing.

---

[1] General Statutes § 53a-121 (b) provides: "Amounts included in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated in determining the grade of the offense."

[2] General Statutes § 53a-122 (a) provides: "A person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and: (1) The property or service, regardless of its nature and value, is obtained by extortion, (2) the value of the property or service exceeds ten thousand dollars, (3) the property consists of a motor vehicle, the value of which exceeds ten thousand dollars, or (4) the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars."

[3] General Statutes § 20-427 (b) provides in relevant part: "No person shall . . . (8) fail to refund the amount paid for a home improvement within ten days of a written request mailed or delivered to the contractor's last known address, if no substantial portion of the contracted work has been performed at the time of the request and more than thirty days has elapsed since the starting date specified in the written contract, or more than thirty days has elapsed since the date of the contract if such contract does not specify a starting date."

Vanacore and Alia gave to the petitioner an initial down payment of $8000 against the estimated $16,500 total cost, as well as an additional $1425 to rent three dumpsters. The contract listed the starting and completion dates as "ASAP." Approximately one year later, the petitioner began work on the roof by removing the old shingles. He did not, however, remove any plywood from the roof, nor did he apply any new shingles. At the habeas proceedings, the petitioner testified that after he purchased the materials to complete the original design for the new roof, Vanacore and Alia changed their minds regarding the pattern they wanted. He also testified that after purchasing more materials to complete Vanacore's and Alia's second desired pattern, they again changed their minds. According to the petitioner, Vanacore and Alia then wanted him to install a new type of roof altogether. The petitioner testified that they wanted him to install a new faux ceramic tile that he did not know how to install. Vanacore and Alia paid the petitioner an additional $2000 to cover the cost of purchasing the new tiles. The petitioner also claimed that in September, 1997, he spent time learning how to install the new tile.

The petitioner further testified that because winter was coming and the tiles did not arrive until October, 1997, he chose not to proceed with the installation. Instead, he secured the roof so that it would be waterproof, not wanting to expose the interior of Vanacore's and Alia's home to the winter elements. In December, 1997, noting that more than sixteen months had passed since entering into their contract with the petitioner, Vanacore and Alia sent to him a written demand for a refund of all moneys, more than $11,000, that they had advanced to him. The petitioner did not return any of their money.

On September 5, 1997, the petitioner entered into a written home improvement contract with William M. Shinker for installation of a roof on Shinker's house in

Guilford. Pursuant to that contract, the petitioner was to replace the old shingles from Shinker's roof with new, architectural style shingles. Shinker gave to the petitioner a down payment of $3975 against the estimated $7950 total cost. The contract specified that the petitioner would start working "ASAP" or between September 7 and 27, 1997. The petitioner did not begin working until sometime during the end of October, 1997, when he removed a portion of Shinker's roof. Upon doing so, he determined that the roof, prior to being reshingled, would need to be resheeted with plywood. That, however, would have increased the overall cost of the petitioner's services beyond the initial price contemplated in the contract. The petitioner testified that although he had made Shinker aware of that possible increase in advance, Shinker no longer wanted the petitioner to continue working. In a letter dated November 10, 1997, Shinker notified the petitioner that he no longer desired the petitioner's services and requested that the petitioner return the down payment. In his letter, Shinker noted that the petitioner had failed to begin working during the dates that were agreed on and failed to complete the job by several deadline dates that the petitioner had made orally. The petitioner did not return any of Shinker's money.

After Shinker complained in writing about the petitioner to the department of consumer protection, the office of the attorney general charged the petitioner with two counts of violating the act for failing to return any money to Vanacore and Alia and to Shinker. The office of the state's attorney subsequently charged the petitioner with one count of larceny in the first degree by an ongoing scheme as a result of his involvement with the two roofing projects. On the advice of his counsel, Howard A. Lawrence, the petitioner pleaded guilty on March 30, 1999, to all three charges. Pursuant to the terms of his guilty plea, the petitioner was to

be sentenced to eight years incarceration, execution suspended after three years served, with five years probation. If, however, the petitioner appeared at sentencing with $7700 in restitution, his sentence was to be suspended. Before actually having pleaded guilty, but in contemplation of doing so, the petitioner had assured Lawrence that he could raise $7700 by sentencing so that his sentence would be suspended.

On October 28, 1999, nearly seven months after pleading guilty, the petitioner appeared before the trial court for sentencing.[4] Having failed to bring any restitution money, the petitioner was sentenced to eight years incarceration, suspended after two years, followed by five years probation with certain conditions.[5] On June 11, 2002, the petitioner filed an amended petition for a writ of habeas corpus, alleging ineffective assistance of counsel. On May 9, 2003, following a habeas hearing, the court issued a memorandum of decision in which it concluded, on the basis of all of the evidence presented, that the petitioner had failed to show that Lawrence's representation was constitutionally deficient and, therefore, denied his petition. The petitioner now appeals. Additional facts will be set forth as necessary.

The petitioner claims that the court improperly concluded that Lawrence provided effective assistance of counsel in advising the petitioner to plead guilty to one count of larceny in the first degree by an ongoing scheme in violation of §§ 53a-121 (b) and 53a-122, and two counts of failing to refund money within ten days of a written request in violation of § 20-427 (b) (8). In support thereof, the petitioner claims that the court improperly rejected his arguments that Lawrence failed (1) to investigate valid defenses and (2) to ensure that

[4] Sentencing originally was scheduled for May 5, 1999.

[5] As a result of Lawrence's and the petitioner's pleas for leniency, the court imposed that sentence, which was less than that requested by the state.

the guilty plea was knowingly and voluntarily given, and that but for those alleged failures, there was a reasonable probability that the petitioner would not have pleaded guilty and would have insisted on going to trial. We are not persuaded.

The standard of review for a challenge to a court's denial of a petition for a writ of habeas corpus based on a claim of ineffective assistance of counsel is well settled. "The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . .

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings . . . and plea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. . . .

"Although [the] decision [to plead guilty or proceed to trial] is ultimately made by the defendant, the defendant's attorney must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome. A defendant

relies heavily upon counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial. The right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction. . . .

"In *Strickland* v. *Washington*, [466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel during criminal proceedings: the defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; id., 687–88; and (2) that defense counsel's deficient performance prejudiced the defense. Id., 694." (Citations omitted; internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152–54, 662 A.2d 718 (1995).

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* v. *Washington*, supra, 466 U.S. 687. In determining whether such a showing has been made, judicial scrutiny of counsel's performance must be highly deferential. Id., 689. The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id., 690.

The second part "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694.

"In *Hill* v. *Lockhart*, [474 U.S. 52, 57–58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)], the court determined that the same two-part standard applies to claims arising from the plea negotiation process and that the same justifications for imposing the prejudice requirement in *Strickland* were relevant in the context of guilty pleas. Although the first half of the *Strickland* test remains the same for determining ineffective assistance of counsel at the plea negotiation stage, the court modified the prejudice standard. . . . [I]n order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . The *Hill* court also stated that the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial." (Citation omitted; internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 156.

Keeping in mind that our scrutiny of the challenged conduct by Lawrence must be highly deferential and that we must judge the reasonableness of his conduct on the facts of this particular case, viewed as of the time of his conduct; see *Strickland* v. *Washington*, supra, 466 U.S. 689–90; we examine whether the petitioner has shown, with respect to each of his arguments, (1) that Lawrence's representation fell below an objective standard of reasonableness; id., 687–88; and, if necessary, (2) that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial; see *Hill* v. *Lockhart*, supra, 474 U.S. 59; *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 156; and that the introduction of the evidence or the defense that

was not identified because of ineffective assistance of counsel likely would have been successful at trial. See *Hill* v. *Lockhart*, supra, 59; *Copas* v. *Commissioner of Correction*, supra, 156.

## I

The petitioner first claims that the court improperly rejected his argument that Lawrence failed to investigate adequately valid defenses to the charges levied against the petitioner. In particular, the petitioner claims that the court improperly rejected arguments that Lawrence failed to investigate adequately (1) whether the petitioner had performed a substantial portion of the contracted for work on Vanacore's and Alia's home and on Shinker's home, and (2) whether the petitioner's status as a registered home improvement contractor entitled him to retain the payments that he already had received.[6]

## A

With respect to whether the court improperly rejected the petitioner's argument that Lawrence failed to investigate adequately whether the petitioner had performed a substantial portion of the contracted for work, we note that § 20-427 (b) provides in relevant part that "[n]o person shall . . . (8) fail to refund the amount paid for a home improvement within ten days of a written request mailed or delivered to the contractor's last known address, *if no substantial portion of the contracted work has been performed* at the time of

---

[6] With respect to the second claim, the petitioner actually argued that in order to convict him at trial, "[t]he state was required to show that [he] was not registered . . . ." He further argued that "[b]ecause [he] was registered to perform [the] services [in question], he was entitled to money for the services actually performed." Given the nature of the charges and those statements, we interpret the latter statement to mean that the petitioner is arguing that being registered entitled him to retain payment for the services that he actually performed despite the requirements of General Statutes § 20-427 (b) (8). See footnote 3.

the request and more than thirty days has elapsed since the starting date specified in the written contract, or more than thirty days has elapsed since the date of the contract if such contract does not specify a starting date." (Emphasis added.) We recognize, therefore, that proof of substantial performance by the petitioner was potentially a valid defense to the charges levied against him. We also recognize, therefore, that Lawrence's alleged failure to investigate that defense adequately, if true, combined with his advice to the petitioner to plead guilty could constitute ineffective assistance of counsel. See *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 154 (noting counsel's obligation to investigate and to evaluate potential defenses prior to advising client on whether to plead guilty).

After a thorough review of the transcripts, record and briefs, however, we conclude, with respect to Lawrence's obligation to investigate the defense of substantial performance, that the petitioner has not shown that Lawrence made any errors so serious that he was not functioning as the "counsel" guaranteed by the sixth amendment. To the contrary, we agree with the court's conclusion that Lawrence adequately investigated that defense and reasonably advised the petitioner to reject it in favor of pleading guilty. At the habeas trial, Lawrence testified that he had discussed the defense of substantial performance with the petitioner and asked him for "receipts for materials, contracts, work order changes [and] any of that kind of material" to demonstrate substantial performance. The petitioner never produced any such documentation, except for evidence of charges for a dumpster.

At the habeas trial, the petitioner argued that an unrelated restraining order prevented him from entering his home where documents evidencing his substantial performance could be retrieved. Lawrence testified, however, that the petitioner never indicated in any of

their conversations that there was anything in his home that would have been relevant to proving substantial performance. Lawrence also testified that because the petitioner had failed to produce any documentary proof of substantial performance, he had informed the petitioner that the defense of substantial performance likely would fail at trial. Furthermore, in the petitioner's explanation to the sentencing court as to why it should allow him to withdraw his plea, he failed to argue that he had, in his home, documents evidencing his substantial performance and that he was prevented from acquiring them because of a restraining order. Instead, he focused on personal problems, including drug use, domestic violence and his failing business, none of which tended to demonstrate substantial performance of the two home improvement contracts in question. Finally, just as the petitioner had failed to produce evidence of his alleged substantial performance for Lawrence, the petitioner also failed to present any documentation or other evidence to the court that would substantiate his claim of substantial performance.

Given these factors, Lawrence's advice not to pursue a defense of substantial performance and, instead, to plead guilty fell "well within the range of professionally reasonable judgments . . . ." *Strickland* v. *Washington,* supra, 466 U.S. 699. Accordingly, the petitioner's first argument must fail.[7]

## B

With respect to whether the court improperly rejected the petitioner's argument that Lawrence failed to investigate adequately whether the petitioner's status

[7] Because the petitioner has failed to show that Lawrence made any errors so serious that he was not functioning as the "counsel" guaranteed by the sixth amendment, we need not review the second part of *Strickland* v. *Washington,* supra, 466 U.S. 694, as modified by the United States Supreme Court in *Hill* v. *Lockhart,* supra, 474 U.S. 57–58, and adopted by our Supreme Court in *Copas* v. *Commissioner of Correction,* supra, 234 Conn. 156–57.

as a registered home improvement contractor entitled him to retain the payments that he already had received, we note that pursuant to General Statutes § 20-429 (f), a registered home improvement contractor may recover payment for work performed, provided he "has complied with subdivisions (1), (2), (6), (7) and (8) of subsection (a) of [§ 20-429],"[8] and "provided the court determines that it would be inequitable to deny such recovery." Although the petitioner did not cite that particular section of the act, we believe that it was the basis for his assertion that "[b]ecause [he] was registered . . . he was entitled to money for the services actually performed."

We also note, however, that there is no language in the act that would exempt a home improvement contractor from refunding moneys requested pursuant to § 20-427 (b) (8) simply because, as the petitioner apparently believes, he is a *registered* home improvement contractor. Although § 20-429 (f) clearly indicates that a registered home improvement contractor may recover payment for work performed, it does not, nor does any other section of § 20-429, excuse a registered contractor from complying with § 20-427 (b) (8). It is apparent from the context of § 20-427 that "person," as that term is used in subsection (b) (8), includes a registered contractor.[9] As such, being a registered home

[8] General Statutes § 20-429 (a) provides in relevant part: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor . . . (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ."

[9] General Statutes § 20-419 provides in relevant part that "[a]s used in [the act], unless the context otherwise requires . . . (7) 'Person' means an individual, partnership, limited liability company or corporation." We believe that definition of "person," for the purpose of understanding the meaning of "person," as that word is used in General Statutes § 20-427 (b) (8), is broad enough to include an individual who is a *registered* contractor, such as the petitioner. There is no language in § 20-427 (b) (8) that indicates

improvement contractor is no defense to not responding to a homeowner's request for a refund pursuant to § 20-427 (b) (8).

As such, a prudent course of action for the petitioner would have been to have refunded the requested moneys and then to have sought, pursuant to § 20-429 (f), recovery of payment for the services that he alleges to have performed. A home improvement contractor, believing that he has performed a substantial portion of the contracted for work, may refuse to refund moneys when requested to do so pursuant to § 20-427 (b) (8). In so doing, however, he risks being charged with, tried and convicted of violating § 20-427 (b) (8) if he is unable to persuade a finder of fact that he performed a substantial portion of the contracted for work.

Given the likelihood that a jury would have found the petitioner to not have substantially performed and given Lawrence's sound opinion that the petitioner's status as a registered contractor was not a valid defense to his alleged violation of § 20-427 (b) (8), we conclude that Lawrence's decision not to pursue that second proposed defense fell "well within the range of professionally reasonable judgments . . . ." *Strickland* v. *Washington,* supra, 466 U.S. 699. Accordingly, the petitioner's second argument must also fail.[10]

---

otherwise or that limits the meaning of the word "person" in that provision to individuals, partnerships, limited liability companies or corporations who are *not* registered. Furthermore, given (1) that "the primary purpose of the act is *to protect consumers* who contract for home improvement work;" (emphasis added) *State* v. *Poirier,* 19 Conn. App. 1, 4, 559 A.2d 1183 (1989); and (2) that the words "person" and "contractor" are used synonymously in § 20-427 (b); see General Statutes § 20-427 (b) ("[n]o *person* shall . . . (8) fail to refund the amount paid for a home improvement within ten days of a written request mailed or delivered to the *contractor*'s last known address" [emphasis added]); we are further persuaded that the term "person," as it is used in § 20-427 (b) (8), includes an individual who is a registered contractor.

[10] See footnote 7.

## II

The petitioner next claims that the court improperly rejected his argument that Lawrence provided ineffective assistance by failing to ensure that the petitioner's guilty plea was knowingly and voluntarily given.[11] In particular, the petitioner argues that the court improperly rejected that argument because Lawrence in fact (1) did not advise him on the elements of the charges and any possible defenses thereto, (2) did not advise him that by pleading guilty he would waive his right to directly appeal his conviction of the underlying crimes[12] and (3) allowed him to plead guilty despite knowing that the petitioner's stress and personal problems precluded him from fully understanding the law and from making rational decisions.

In order "for a plea to be valid, the record must affirmatively disclose that the defendant understands the nature of the charge upon which the plea is entered . . . the mandatory minimum sentence, if any . . . the fact that a statute does not permit the sentence to be suspended . . . the maximum possible sentence . . . and that the defendant has the right to plead not guilty or to persist in that plea if already made, the right to a trial by a jury or judge, the right to assistance of counsel, the right to confront the defendant's accusers and the right against compelled self-incrimination. . . . The record must further disclose that the plea is volun-

---

[11] The court stated briefly in its memorandum of decision: "Other allegations of the amended petition, *such as the claim that defense counsel* did not adequately investigate all aspects of the case and *failed to ensure that the petitioner's plea was knowing and voluntary, have not been proven.*" (Emphasis added.)

[12] In his brief, the petitioner simply states that Lawrence's representation was ineffective "because he failed to advise [the petitioner] that he waived the right to appeal upon pleading guilty." We gather, from the context of his argument, that the petitioner is speaking about the waiver of his right to directly appeal his conviction of the underlying crimes and not about his ability to challenge on direct appeal the validity of the guilty plea itself.

tary and not the result of threats or promises." (Citations omitted; internal quotation marks omitted.) *In re Jason C.*, 255 Conn. 565, 572, 767 A.2d 710 (2001). "[I]t cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. . . . An understanding of the law in relation to the facts must include all relevant information concerning the sentence." (Internal quotation marks omitted.) Id., 574.

## A

The petitioner first argues that Lawrence did not advise him on the elements of the charges and any possible defenses thereto and, therefore, that the court improperly rejected the claim that Lawrence failed to ensure that the plea was knowingly and voluntarily given. The record, however, shows otherwise. Lawrence testified that he explained to the petitioner all of the elements of the crimes with which he was charged. Furthermore, when the trial court canvassed the petitioner about the crimes, he stated that he did not dispute the factual bases for them and that he was satisfied with Lawrence's representation. At no point in time during the plea proceeding did the petitioner allege that his entry of the plea was unknowing or involuntary.

## B

The petitioner next argues that Lawrence did not advise him that by pleading guilty, he would waive his right to appeal directly from his conviction of the underlying crimes and, therefore, that the court improperly rejected his claim that Lawrence failed to ensure that the plea was knowingly and voluntarily given. The petitioner, however, failed to present any evidence at the habeas proceeding that had he known that a guilty plea operated as a waiver of his right to appeal directly from his conviction of the underlying crimes, he would have forgone pleading guilty and chosen to go to trial. Furthermore, he never testified that Lawrence failed to

inform him that by pleading guilty, he waived his right to file a direct appeal from his conviction. Moreover, the trial court informed the petitioner that "once [it] accepted [the] plea . . . *the only way* of knocking out the three years to serve [was to] show up at the day of sentencing with $7700 in cash." (Emphasis added.) The petitioner also had a criminal history and had pleaded guilty before and, therefore, presumably was familiar with the consequences of pleading guilty.

C

The petitioner next argues that Lawrence allowed him to plead guilty despite Lawrence's knowing that the petitioner's stress and personal problems precluded him from fully understanding the law and from making rational decisions and, therefore, that the court improperly rejected the claim that Lawrence failed to ensure that the plea was knowingly and voluntarily given. The record does not support that argument. Although Lawrence testified that he was aware of the petitioner's personal and emotional problems, he also stated that, despite those problems, the petitioner understood the charges and proceedings against him, and that it ultimately was the petitioner's decision to plead guilty. Furthermore, sometime after the proceeding at which the petitioner pleaded guilty but prior to the date on which he was sentenced, Lawrence filed, in conjunction with an application for an evaluation of the petitioner's competency, a motion to vacate the plea. The basis for that motion, in part, was that the petitioner, at the time of pleading, was not competent. The results of the evaluation, however, indicated otherwise, thereby lending further credence to the court's rejection of the petitioner's argument that Lawrence allowed the petitioner to plead guilty despite knowing that the petitioner's stress and personal problems precluded him from fully understanding the law and from making rational decisions.

We therefore conclude that with respect to the petitioner's argument that his plea was unknowing and involuntary, he has failed to show that Lawrence made any errors so serious that he was not functioning as the "counsel" guaranteed by the sixth amendment. The court correctly held that the petitioner did not prove that Lawrence failed to ensure that the plea was knowingly and voluntarily given.

The judgment is affirmed.

In this opinion the other judges concurred.