******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JULIO RODRIGUEZ *v.* COMMISSIONER
OF CORRECTION
(AC 35346)

Gruendel, Sheldon and Flynn, Js.

*Argued April 14—officially released June 24, 2014*

(Appeal from Superior Court, judicial district of New Haven, Hon. Anthony V. DeMayo, judge trial referee.)

*Peter G. Billings*, assigned counsel, for the appellant (petitioner).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Robin Lipsky*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

GRUENDEL, J. The petitioner, Julio Rodriguez, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. He claims that the court improperly concluded that he had not established that his trial counsel rendered ineffective assistance. We affirm the judgment of the habeas court.

This case involves a gang related murder. In early February, 1996, members of the Latin Kings and the Neta gangs met at a home on River Street in Waterbury. The petitioner was a member of the Latin Kings and was present at that meeting, as were Brandon Rivera and Julio Lugo. Both gangs were upset with Anthony DeJesus, a former member of the Latin Kings who recently began selling heroin "on turf" purportedly belonging to the Neta gang. At that meeting, both gangs agreed that DeJesus should be murdered and approved an "order" to that effect.

As recounted by this court in the petitioner's direct appeal, "[o]n February 15, 1996, [DeJesus] was shot to death during the course of a robbery. Approximately two weeks later, Maryanne Terpack, the [petitioner's] pregnant girlfriend, gave Waterbury police a statement that implicated [him] in the killing.[1] After giving that statement to the police, Terpack was incarcerated at York Correctional Institution in Niantic as a result of an outstanding warrant. On March 8, 1996, in the late morning, the [petitioner] was located in Bristol by the police. [He] voluntarily agreed to return to the Waterbury police station in the company of Sergeant Michael Ricci and Detective Gary Pelosi. When they arrived, the [petitioner] was advised of his constitutional rights orally and in writing. The [petitioner] also signed an advisement of rights card after demonstrating his proficiency in the English language. The [petitioner] was then questioned by Ricci in an interview room. During the questioning, the [petitioner] admitted his involvement in the murder. At approximately 2 p.m., Ricci started taking the [petitioner's] written statement. The [petitioner] signed the completed statement at approximately 5:15 p.m." *State* v. *Rodriguez*, 56 Conn. App. 117, 118–19, 741 A.2d 326 (1999), cert. denied, 252 Conn. 926, 746 A.2d 791 (2000).

In his written confession, the petitioner stated in relevant part: "I, Julio Rodriguez, do give this statement voluntarily, having been advised of my rights and waiving these rights. On Thursday, February 15, 1996 . . . I hooked up with Brandon Rivera and Julio Lugo and we chilled on Mill Street for a while until a Waterbury kid, who I think is a Neta gang member, showed up. The Waterbury kid was driving a black Caddy or Oldsmobile. Julio Lugo [and] Brandon Rivera told me to get in my car and let's go do this. I knew that they wanted to go

rob [the victim] at this time. Julio Lugo and Brandon Rivera got into the Waterbury's kid's car with the Waterbury kid driving. I was supposed to be a lookout for the cops and both me and the other guys had a walkie talkie. It was about nine o'clock p.m. I was parked on the top of East Clay Street near the stop sign and I could see all the way down to [the victim's] house. I saw the black car with Brandon Rivera, Julio Lugo and the Waterbury kid pull up behind a house on the same street as [the victim's] . . . . I talked to them on the walkie talkie and told them everything was straight and there was no cops around. I then saw Brandon Rivera, Julio Lugo and the Waterbury kid walk down the street towards [the victim's] house and I saw all three of them go down to [the victim's] house. It looked like they opened a gate near the fence at [the victim's] house. I then saw the three of them go towards the back of [the victim's] house. . . . While I was sitting in the car watching out for them I heard what sounded like a lot of gunshots. The shots were coming from the direction of [the victim's] house. I heard about eighteen or nineteen shots. I then saw Julio Lugo, Brandon Rivera and the Waterbury kid come running from the back of [the victim's] house. The three of them ran up East Clay Street . . . . I saw the black car pull out and I drove behind it. I told them on the walkie talkie that if they had money to save me some money . . . ." The petitioner also stated in his written confession that, following the shooting, a friend drove the petitioner and Terpack to Saint Mary's Hospital because Terpack "had pains in her stomach . . . ."

The petitioner thereafter was charged with aiding and abetting murder in violation of General Statutes §§ 53a-8 (a) and 53a-54a, criminal attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (1) and (2), and felony murder in violation of General Statutes § 53a-54c. Prior to trial, the petitioner moved to suppress his written confession, claiming that it was involuntarily made. After a hearing, the trial court denied that motion. The petitioner thereafter obtained new legal counsel, who filed a second motion to suppress the written confession, arguing that he should be provided a "fresh start." The court granted that motion and conducted a second suppression hearing, at the conclusion of which the court denied the petitioner's second motion to suppress.[2]

Following a trial, the jury found the petitioner guilty of aiding and abetting murder; it acquitted him on the felony murder and attempted robbery counts. The court rendered judgment accordingly, sentencing the petitioner to a total effective term of fifty years incarceration. From that judgment, the petitioner directly appealed to this court, which affirmed the judgment of conviction. *State* v. *Rodriguez*, supra, 56 Conn. App. 122.

On June 6, 2005, the petitioner filed a four count amended petition for a writ of habeas corpus. The first count alleged actual innocence while the second and fourth counts alleged ineffective assistance of trial counsel. The third count, which the petitioner withdrew at the commencement of the habeas trial, alleged that the petitioner's incarceration is illegal because his written confession was involuntarily made. Only two individuals testified at the habeas trial—the petitioner and his trial counsel, Attorney Michael Moscowitz. At the conclusion of that trial, the court rejected all of the petitioner's claims. Accordingly, the court denied the petition and subsequently granted the petition for certification to appeal. This appeal followed.

In this appeal, the petitioner challenges the propriety of the court's determination that Moscowitz did not render ineffective assistance in failing to investigate his alibi defense.[3] During the habeas trial, the petitioner testified that he asked Moscowitz to call Jorge Sierra, Jorge Galante, and Sully Lugo to testify at his criminal trial in support of his contention that he was at Saint Mary's Hospital at the time of the shooting. He now claims that the failure to do so violated his right to effective assistance of counsel.

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel during criminal proceedings: the defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness . . . and (2) that defense counsel's deficient performance prejudiced the defense. . . . The first part requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. . . . In determining whether such a showing has been made, judicial scrutiny of counsel's performance must be highly deferential. . . . The reviewing court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . The second part requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citations omitted; internal quotation marks omitted.) *Calabrese* v. *Commissioner of Correction*, 88 Conn. App. 144, 150–51, 868 A.2d 787,

cert. denied, 273 Conn. 936, 875 A.2d 543 (2005). "Because both prongs [of *Strickland*] must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Poulin* v. *Commissioner of Correction*, 103 Conn. App. 303, 309, 928 A.2d 556, cert. denied, 284 Conn. 918, 931 A.2d 937 (2007).

The petitioner cannot establish the requisite prejudice stemming from Moscowitz' alleged failure to investigate the alibi defense. Although he claims that Sierra, Galante, and Sully Lugo potentially could have testified on his behalf at his criminal trial, the petitioner did not offer the testimony of *any* of those individuals at his habeas trial. The petitioner also did not present any evidence as to precisely what testimony those witnesses would have offered had Moscowitz called them to testify at his criminal trial. As a result, he cannot demonstrate, as he must, that those individuals would have substantiated his allegation that he was at the hospital at the time of the shooting. See, e.g., *Norton* v. *Commissioner of Correction*, 132 Conn. App. 850, 859, 33 A.3d 819 (petitioner cannot prevail on claim that trial counsel was ineffective for failing to investigate witnesses when "the petitioner has not presented us with any beneficial testimony from these witnesses that would demonstrate how they would have assisted in his case had trial counsel interviewed them" and thus "failed to establish that further investigation of these witnesses would have been helpful to his defense"), cert. denied, 303 Conn. 936, 36 A.3d 695 (2012); *Lambert* v. *Commissioner of Correction*, 100 Conn. App. 325, 327–28, 918 A.2d 281 (prejudice not established where petitioner failed to call alibi witness at habeas trial or offer evidence as to what [witness] would have testified), cert. denied, 282 Conn. 915, 924 A.2d 138 (2007); *Hooks* v. *Commissioner of Correction*, 61 Conn. App. 555, 557, 764 A.2d 1291 (2001) (petitioner cannot establish ineffective assistance of counsel for failure "to investigate certain witnesses" when "[n]one of those witnesses testified at the habeas trial" and no evidence introduced as to "how that testimony may have supported his claims").

Moreover, the petitioner's alleged alibi defense is contrary to ample evidence in the record before us. The emergency room records from Saint Mary's Hospital, which were admitted into evidence in his criminal trial, indicate that Terpack was admitted at 10:45 p.m. on February 15, 1996, approximately forty-five minutes *after* the shooting.[4] That evidence is consistent with the petitioner's statement in his written confession that, following the shooting, "Junior dropped me and Jorge [Sierra] and [Terpack] off at the hospital and I stayed there until I heard the cops were coming to the hospital."

On a more fundamental level, the petitioner's alibi

defense is contrary to the written statements that he and Terpack provided the police. Both implicate the petitioner in the shooting and indicate that he was near the murder scene—and not the hospital—as gunshots struck the victim. Julio Lugo likewise testified at trial that the petitioner was "trying to hide behind [Julio Lugo's] house" at approximately 10:15 to 10:30 p.m. on the night of the shooting. When Julio Lugo asked the petitioner "what was going on," the petitioner told him that "they had just finished killing somebody." In addition, Moscowitz testified at the habeas trial that, in preparing for the petitioner's criminal trial, he received information relating to the petitioner's participation in the murder that he did not present at trial.[5] Specifically, Moscowitz testified that he received additional information that the petitioner "was an officer in the Latin Kings; that he actually was the one who was given the money [and] that he participated in the murder." In light of the foregoing, the habeas court in its memorandum of decision observed that "no reasonable trier [of fact] could acquit" the petitioner on the aiding and abetting murder count.

The prejudice prong of *Strickland* requires the petitioner to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Calabrese* v. *Commissioner of Correction*, supra, 88 Conn. App. 151. That he has not done. We therefore conclude that the court properly denied the amended petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Terpack's written statement provides in relevant part: "My boyfriend is [the petitioner] . . . . On February 15, 1996, I went to the emergency room at St. Mary's Hospital in Waterbury at about 8:30 p.m. I was admitted . . . because of a ruptured appendix. I was in a room in the hospital and [the petitioner] was with me until the nurse asked him to leave . . . . I did not see [the petitioner] again until later, and I am not sure what time it was. Later that evening [the petitioner] came back to see me and at this time he told me that another friend of ours, whose name is Julio Lugo, had shot a brother six times. By brother I mean a Latin King member, because [the petitioner] and Julio Lugo are both Latin King gang members. . . . [The petitioner] went on to tell me that he, Brandon Rivera and another guy from Waterbury . . . had went along with Julio Lugo to be lookouts. [The petitioner] said that he stood on one side of the house, Brandon Rivera stood on the other, and the Waterbury guy stayed in the back by the fence . . . . [The petitioner] told me that after the [victim] had been shot they all ran away."

[2] This court affirmed the propriety of that determination on direct appeal. *State* v. *Rodriguez*, supra, 56 Conn. App. 122.

[3] In this appeal, the petitioner does not contest the court's rejection of his claim of actual innocence.

[4] A 911 call reporting the shooting was placed at approximately 10:00 p.m. on the night of February 15, 1996. Officer Manual Tirado of the Waterbury Police Department responded to a dispatch call and arrived at the murder scene at 10:06 p.m.

[5] Moscowitz was called as a witness at the habeas trial by the petitioner.