STATE OF CONNECTICUT *v.* JAMES BAKER
(11029)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued February 7—decision released April 2, 1985

*Victor P. Fasano,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attor-

ney, and *Mary M. Galvin,* assistant state's attorney, for the appellee (state).

SHEA, J. After a jury trial, the defendant, James Baker, was found guilty of the crimes of arson in the second degree and conspiracy to commit arson in the second degree, in violation of General Statutes §§ 53a-112 (a)[1] and 53a-48 (a),[2] respectively, and sentenced on September 10, 1981, to concurrent terms of not less than two nor more than four years of incarceration. On appeal, the defendant claims that the convictions must be overturned because (1) the evidence was insufficient as a matter of law to support convictions for the crimes charged, (2) punishment for both crimes under these circumstances would be multiplicitous, and (3) the trial court erred in admitting for impeachment purposes an out-of-court statement of a defense witness when the state had failed to produce the statement in response to a pretrial request for exculpatory information. We find no merit in the defendant's contentions and affirm the convictions.

The state produced the testimony of four young adults present at the Duchess Diner in West Haven at approximately 2 a.m. on November 8, 1980, when the incident occurred that gave rise to the criminal charges involved here. One of these witnesses testified that she saw a man, identified as Kelly Moye, ignite a fire in

---

[1] At the time of the crimes, General Statutes § 53a-112 (a) provided: "A person is guilty of arson in the second degree when he starts a fire or causes an explosion: (1) With intent to destroy or damage a building, as defined in section 53a-100, (A) of another, or (B) whether his own or another's, to collect insurance for such loss; and (2) such act subjects another person to a substantial risk of bodily injury or another building to a substantial risk of destruction or damage."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

what turned out to be the defendant's 1978 Thunderbird automobile in the Duchess Diner parking lot. The defendant was standing near the rear entrance to the diner adjacent to the parking lot at the time. When two of the young adults attempted to intervene to extinguish the fire, the defendant moved toward the car, and a fight broke out in which the defendant and Moye were allied against the others. Firemen discovered a container partly filled with gasoline on the floor of the vehicle below the dashboard, where most of the fire damage was concentrated, and the fire marshal testified that in his opinion the fire had been purposely set. There was undisputed testimony that the defendant's automobile had been repossessed for his failure to make car loan payments one month before the incident and that the defendant had redeemed the car four days later, but was in arrears on the date of the fire. The automobile was covered by an insurance policy, on which the defendant made a claim as a result of the fire.

The defendant disputed the allegation that Kelly Moye had set fire to the automobile. The defendant claimed that, when he returned to the diner with Moye, he discovered his car on fire and that, as he went to notify the fire department, Moye attempted to extinguish the flames. At this point they were set upon by the state's witnesses. The defendant attributed his refusal to make his car payments to his protest concerning the car dealer's failure to provide him with a second set of hubcaps.

I

In arguing that the evidence was insufficient to support the convictions, the defendant first contends that the arson statute underlying both convictions contains an element not even remotely proved by the state's evidence. At the time of the incident, General Statutes § 53a-112 applied only to fires set with the intent "to

destroy or damage a building, as defined in [General Statutes] section 53a-100 . . . ." The defendant argues that his automobile is not a building and that there is no evidence of an intent to harm any building. If the word "building" as used in the statute were given its ordinary meaning, the defendant's position would be sound.[3] Section 53a-112 does not employ the word in its usual sense, however. For a definition of the word "building," the arson statute specifically refers to General Statutes § 53a-100, which defines "building" to include "in addition to its ordinary meaning . . . any watercraft, aircraft, trailer, sleeping car, railroad car, other structure or *vehicle* or any building with a valid certificate of occupancy." (Emphasis added.) The defendant points to the statutory definition as it read before a 1974 amendment. See Public Acts 1974, No. 74-186, § 10. At that time the statute limited the scope of "other structure or vehicle" to include only those "adapted for overnight accommodation of persons or for carrying on business therein." We reject the defendant's contention that the 1974 enactment deleting this last phrase did not change the meaning of the statute. Although the 1974 amendment was characterized as "technical" in the legislative discussion; 17 S. Proc., Pt. 4, 1974 Sess., p. 1777 (remark of Sen. George C. Guidera); and was part of a bill entitled "An Act Concerning Technical Amendments Affecting the Operation of the Criminal Justice Division," the elimination of the phrase which required a vehicle to be "adapted for overnight accommodation of persons or for carrying on business therein" must be given substantive sig-

---

[3] The 1971 Commentary of the Commission to Review the Criminal Statutes contained the following language explaining the scope of § 53a-100 (a) as it then existed: *"Building.* This definition is essentially the same as that used in the sections on Arson. Its purpose is to include those structures and vehicles which typically contain human beings for extended periods of time, in accordance with the basic rationale of the crime."

nificance.[4] " '[S]tatutes should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment.' *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 [1974]." *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 58, 392 A.2d 491 (1978). The obvious purpose of the 1974 amendment was the elimination of the very language relied upon by the defendant to limit the scope of the statute to exclude the vehicle at issue. The defendant claims that the legislature did not intend to eliminate this limitation. "It has often been said that the legislative intent is to be found not in what the legislature meant to say, but in the meaning of what it did say." *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980). " 'Courts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for adding them.' *State* v. *Nelson,* 126 Conn. 412, 416, 11 A.2d 856 [1940]. In considering the relevant statutes, we find no ambiguity or reason to seek any legislative intent not plainly indicated in the language used." *Liistro* v. *Robinson,* 170 Conn. 116, 130, 365 A.2d 109 (1976).

---

[4] This result is not inconsistent with our recent decision in *State* v. *Perry,* 195 Conn. 505, 488 A.2d 1256 (1985), in which we refused to give substantive effect to a technical revision of the General Statutes. An amendment, even though characterized as "technical" by the legislature, is an intentional action by that body to modify the statutes of the state and must be given its ordinary meaning regardless of its characterization. "When changes have been introduced by amendment it is not to be assumed that they are without design." *Stamford* v. *Stamford,* 107 Conn. 596, 606, 141 A. 891 (1928). In contrast, a revision is by its nature not intended to change anything, but only to restate what has already been legislated. See General Statutes § 2-56 (g). It is for that reason that "[r]evisors of statutes are presumed not to change the law if the language which they use fairly admits of a construction which makes it consistent with the former statute." *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 393, 400–401, 161 A. 852 (1932).

The legislative history accompanying Public Acts 1979, No. 79-570, § 7, a 1979 amendment to § 53a-100, supports our interpretation of the latter statute as including the defendant's automobile. The explanation given for this amendment, which added the phrase "or other building with a valid certificate of occupancy" to the definition of building, explicitly declared the statute applicable to vehicles of the type involved here. "This amendment makes some technical changes in the bill to be sure that the definition of the word building would be broad enough to include a motor vehicle . . . ." 22 S. Proc., Pt. 11, 1979 Sess., p. 3727 (remarks of Sen. Salvatore C. DePiano). "So, then a building is defined in our statutes as any structure. It doesn't matter whether we're talking about an abandoned car, a boarded-up barber shop, a boarded-up and abandoned office building." 22 H. R. Proc., Pt. 31, 1979 Sess., p. 10,878 (remarks of Rep. John A. Berman). In the face of this legislative discussion of the scope of § 53a-100 as it pertains to motor vehicles, there can be no doubt that the defendant's automobile was intended to be included in the definition of "building" for the purposes of § 53a-112, as the plain language of § 53a-100 indicates.

Aside from his interpretation of § 53a-100 as excluding the vehicle involved here, the defendant separately claims that the evidence presented was insufficient to support the convictions as a matter of law. The defendant asserts that "[t]he observed actions of the defendant Baker were entirely consistent with his innocence." In reviewing a sufficiency of the evidence claim, "[o]ur inquiry is limited, however, to whether the facts supported reasonable inferences allowing the trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. *State* v. *Haddad,* 189 Conn. 383, 387–90, 456 A.2d 316 (1983)."*State* v. *Vincent,* 194 Conn. 198, 206, 479 A.2d 237 (1984).

In this analysis, "the evidence presented at the trial must be given a construction most favorable to sustaining the jury's verdict." *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978). Under this standard, the evidence adequately supported the verdict.

The defendant was convicted of arson in violation of General Statutes § 53a-112 and conspiracy to commit arson in violation of § 53a-48. The state never contended that the defendant ignited the fire himself, but charged him under § 53a-8 as an accessory to the arson committed by his companion.[5] If the state's version of the facts is credited, the evidence shows sufficient concert of action between the defendant and his companion to support both the accessory allegation and the inference of agreement necessary to the conspiracy conviction. "Conspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons. *State* v. *Faillace,* 134 Conn. 181, 185, 56 A.2d 167 [1947]. It is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. The combination or confederation may be proved by circumstantial evidence, that is, by proof of the separate acts of the individuals accused and by proof of circumstances from which the illegal confederation may be inferred. *State* v. *Gerich,* 138 Conn. 292, 297, 83 A.2d 488 [1951]." *State* v. *Holmes,* 160 Conn. 140, 150, 274 A.2d 153 (1970). Proof that the defendant and Moye were companions, that the defendant was present and could observe the actions taken by Moye with respect to the defendant's automobile, that the defendant had a reason to destroy his car and that the defendant did nothing to stop Moye is sufficient to raise an inference

---

[5] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

of the defendant's participation in Moye's actions in setting the fire and also of an agreement between the parties resulting in those actions. "There [is] no need to prove a formal agreement between the defendant and [his companion]. It was enough if they knowingly engaged in a mutual plan to do a forbidden act." *State* v. *Holmes, supra,* 149.

The defendant failed in his brief to specify any elements of the crimes beyond those discussed previously which he claims were not supported by sufficient evidence. Nevertheless, we have no difficulty in ruling that the sufficiency claim as it relates to the other elements of the crimes is of no merit. The conspiracy conviction requires in addition to an agreement only an overt act taken in furtherance of that agreement.[6] Obviously, if the arson itself was accomplished, the overt act requirement of the conspiracy charge was satisfied. At the time of the crime, General Statutes § 53a-112 defined arson in the second degree as requiring four elements relevant to the facts of this case. The statute required the state to prove (1) that the defendant, as principal or accessory, started the fire, (2) with intent to destroy or damage a "building," (3) with intent to collect insurance for the loss, (4) where the act subjected another "building" to a substantial risk of destruction or damage. To satisfy the burden of establishing each of these elements, the state provided evidence that: (1) an eyewitness saw the defendant's companion set the fire; (2) the fire was set in a "building," his automobile; accelerants were found in the "building," and the fire marshal believed the fire to have been purposely set; (3) the "building," which the defendant was in danger of losing for failure to make loan payments, was insured for fire loss and the defendant made a claim on the policy; (4) the defendant's own principal witness, Kelly Moye, as he testified on cross-examination, was

---

[6] See footnote 2, supra.

"definitely" concerned that his car, also a "building" under § 53a-100, would be damaged by the fire in the defendant's car. Thus the jury could reasonably have found that each of the required elements was adequately supported by the evidence.

## II

The defendant's second claim of error involves the claimed multiplicity of the convictions. The exact nature of the claim is ambiguous, as the defendant argued for the applicability of Wharton's rule in his brief but defined his objection in terms of the included offense rule of *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932), at oral argument.[7] Neither proposition is meritorious.[8] We recently faced and rejected the argument that convictions for conspiracy to commit a substantive offense and for the underlying offense based on an accessory theory violated the prohibition against double jeopardy contained in the United States constitution and inherent in the

---

[7] In *Iannelli* v. *United States,* 420 U.S. 770, 782, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975), the United States Supreme Court determined "that the broadly formulated Wharton's Rule does not rest on principles of double jeopardy . . . . Instead, it has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." The same may be said of the *Blockburger* test, which has been termed a "rule of statutory construction" which does not bar a legislature from proscribing cumulative punishments for the same conduct if it clearly so intends. *Missouri* v. *Hunter,* 459 U.S. 359, 368, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). Despite the similar nature of the two presumptions, the claimed applicability of one does not implicate the other. We assume that the defendant intended to raise a double jeopardy claim, relying on the two presumptions in arguing that punishment for both crimes involved here was not intended by the legislature, and thus the dual convictions and sentences violated the double jeopardy principle.

[8] Because we have characterized the defendant's claim in double jeopardy terms, we will review the claim despite the defendant's failure to raise the issue in the trial court. See *State* v. *Amaral,* 179 Conn. 239, 242, 425 A.2d 1293 (1979); *State* v. *Acklin,* 171 Conn. 105, 116 n.2, 368 A.2d 212 (1976).

law[9] of Connecticut. In *State* v. *Johns,* 184 Conn. 369, 439 A.2d 1039 (1981), we applied the *Blockburger* test to an analogous situation and concluded that each crime required proof of a fact which the other did not; see *State* v. *Devino,* 195 Conn. 70, 75, 485 A.2d 1302 (1985). The defendant has provided no persuasive reason to alter this conclusion, and we decline to do so.

The defendant's reliance on Wharton's rule is likewise misplaced. Wharton's rule provides that "[a]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to *necessarily require* the participation of two persons for its commission." (Emphasis added.) 1 Wharton, Criminal Law & Procedure (Anderson Ed.) § 89, p. 191; see *State* v. *Acklin,* 171 Conn. 105, 117, 368 A.2d 212 (1976). The United States Supreme Court has explained the reason for barring convictions of both conspiracy and the crime underlying the conspiracy when the rule applies. "Wharton's Rule applies only to offenses that *require* concerted criminal activity, a plurality of criminal agents. In such cases, a closer relationship exists between the conspiracy and the substantive offense because *both* require collective criminal activity." (Emphasis in original.) *Iannelli* v. *United States,* 420 U.S. 770, 785, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975). In arguing for the applicability of Wharton's rule, the defendant states that he was "not charged with committing the substantive offense of arson in either count. He [was] charged as an accessory in the first count and as a conspirator in the sec-

---

[9] " 'The constitution of Connecticut has never contained a provision against double jeopardy such as that found in article five of the amendments to the constitution of the United States. . . . Nevertheless, this court has long recognized as a fundamental principle of common law that no one shall be put in jeopardy more than once for the same offense.' " *State* v. *Johns,* 184 Conn. 369, 373 n.6, 439 A.2d 1049 (1981), quoting *State* v. *Langley,* 156 Conn. 598, 600–601, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969).

ond count." The defendant's mischaracterization of the charges leads him to an erroneous result. There is no such crime as "being an accessory"; the defendant was charged with the substantive offense of arson. The accessory statute merely provides alternate means by which a substantive crime may be committed. The substantive crime of which the defendant was convicted, arson in the second degree, does not *require* "the participation of two persons for its commission" or any type of "collective criminal activity." The fact that, as in this instance, two persons were involved in the crime does not implicate Wharton's rule. See *State* v. *DeMartin*, 171 Conn. 524, 530–33, 370 A.2d 1038 (1976); *State* v. *Acklin*, supra, 116–19. We have no reason to presume the legislature to have proscribed dual punishment for conspiracy and the underlying substantive offense where that offense does not require concerted action, and therefore we find no double jeopardy infraction in the sentences imposed on this defendant. Accord *State* v. *McDaniel*, 176 Conn. 131, 405 A.2d 68 (1978) (convictions for soliciting arson and conspiracy to commit arson upheld).

### III

Finally, the defendant complains that the trial court erred in allowing the state to impeach a defense witness through the admission of a prior tape-recorded statement of that witness where the statement was not disclosed to the defense before trial. The defendant had made a general request for exculpatory material before trial, and he claims that the "suppressed" statement, because it corroborates in part the defendant's version of the events, was covered by the motion. The state responds that the statement was not suppressed, and was, in any event, not material to the outcome.

When the state offered the statement on cross-examination, the defendant failed to raise this suppression

argument, basing his objection solely on the grounds of relevance. "Only in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised [or] decided in the trial court." *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973). Under our case law, the violation of due process claimed by the defendant is not established unless it is shown, inter alia, that " 'the omitted evidence creates a reasonable doubt [as to his guilt] that did not otherwise exist . . . .' *United States* v. *Agurs,* [427 U.S. 97, 112, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)]." *State* v. *Doolittle,* 189 Conn. 183, 198, 455 A.2d 843 (1983). If the defendant can meet this burden, he has shown that "the record adequately supports a claim that [he] has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* supra, 70. We therefore review the claim to see if it meets this standard.

"It is a violation of due process for the prosecution to suppress material evidence favorable to the accused. *Brady* v. *Maryland,* 373 U.S. 83, 86, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). To come within the strictures of *Brady,* however, it must appear (1) that the prosecution suppressed evidence after a request by the defense;[10] (2) that the evidence was favorable to the defense and (3) that it was material. *Moore* v. *Illinois,* 408 U.S. 786, 794–95, 92 S. Ct. 2562, 33 L. Ed. 2d 706, reh. denied, 409 U.S. 897, 93 S. Ct. 87, 34 L. Ed. 2d 155 (1972)." (Footnote added.) *State* v. *Altrui,* 188 Conn. 161, 177, 448 A.2d 837 (1982). "The test of materiality is whether the omitted evidence, evaluated in the context of the entire record, creates a reason-

[10] While we need not decide the issue today, we note that the United States Supreme Court has ruled that "if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made." *United States* v. *Agurs,* 427 U.S. 97, 107, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976).

able doubt that did not otherwise exist." *State* v. *Storlazzi,* 191 Conn. 453, 461–62, 464 A.2d 829 (1983); *State* v. *Doolittle,* supra, 198–99.

Assuming that the state did in fact suppress the statement of the defense witness,[11] it is apparent that the defendant cannot meet the second and third prongs of the test for constitutional error. The state offered the statement to show inconsistencies between it and the testimony of the witness. Obviously these inconsistencies could not in any sense be viewed as favorable to the defense. The defendant does claim that other portions of the statement were consistent with and therefore corroborated the testimony of the witness. Such consistent statements could not possibly create a reasonable doubt that did not otherwise exist because, by the defendant's own characterization, the evidence was already before the jury by virtue of the testimony of the same witness. The defendant points to no exculpatory information contained in the statement that was not otherwise before the jury or that might even have led to the discovery of additional exculpatory information. Under these circumstances, there was no constitutional error in the failure to disclose the statement or in its admission before the jury.

There is no error.

In this opinion the other judges concurred.

---

[11] The telephone conversation between a police officer and the defense witness occurred during trial and was offered eight days later on July 24, 1981. The defendant's claim of suppression relates to this eight day period, during which the state had a continuing obligation to respond to the defendant's pretrial discovery motion. Practice Book § 734.