# REGINALD HARRIS *v.* COMMISSIONER OF CORRECTION
## (AC 28282)

DiPentima, Gruendel and Stoughton, Js.

Argued March 14—officially released May 20, 2008

*Christopher M. Neary*, special public defender, for the appellant (petitioner).

*Toni M. Smith-Rosario*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Edward R. Narus*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

GRUENDEL, J. The petitioner, Reginald Harris, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. He claims that

the court improperly concluded that (1) his challenges to the legality of his sentence lacked merit and (2) his trial counsel provided effective assistance. We affirm the judgment of the habeas court.

The facts underlying this habeas appeal are set forth in *State* v. *Harris*, 28 Conn. App. 474, 612 A.2d 123, cert. denied, 223 Conn. 926, 614 A.2d 828 (1992). "At about 6:30 p.m. on October 12, 1989, the victim, Timothy Wallace, age eighteen, was walking with a friend, Eugene Finley, on Collins Street in Hartford. As they turned onto Huntington Street, they observed three men on the other side of the street. The three men crossed the street and came up behind the victim and Finley. The victim turned and saw that one of the men had grabbed Finley and was telling Finley to leave the area. As Finley left, one of the men put a gun to the victim's head and another of the men, the shortest one, flicked the victim's glasses off. The man who had put the gun to the victim's head grabbed the victim's arm and ordered him to keep walking. The [petitioner], who was the tallest of the three and wearing a brown trench coat, carried a sawed-off shotgun and a duffel bag. The [petitioner] walked on the victim's right side and the shortest man walked behind. They crossed several intersections and finally stopped in front of 122 Huntington Street. When they stopped, the man who had put the gun to the victim's head told the victim to take off his jacket, which was a green Whalers jacket.[1] The victim complied. The man then ordered the victim to give him his watch and the victim again complied. The man then struck the victim on the nose with the butt of the gun, fracturing the victim's nose and causing him to fall backwards onto the sidewalk. As the victim attempted to get up from the sidewalk, the [petitioner] pushed

[1] For a quarter century, the Whalers were a professional hockey team located in Hartford. In 1997, to the disappointment of many a Whalers fan, the franchise moved to Raleigh, North Carolina.

him back down and struck him in the eye with the shotgun. The shortest man then demanded money and reached into the victim's pocket and removed approximately $54. The [petitioner] then said, 'Let me shoot him,' but one of the other men advised against it. The victim was then told to leave at which point he ran to a friend's house.

"Shortly thereafter, the victim notified the police and gave them a description of the three men. Within a short time the police saw three men who fit the description given by the victim. The [petitioner], who was one of the three men spotted, was carrying a shotgun. All three men were taken into custody and the police recovered a sawed-off shotgun, a duffel bag, and a green Whalers jacket from them. The next day, the victim went to the police station where he identified all three men from photographs." Id., 475–76.

The petitioner was arrested and charged in separate informations with robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-8, and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-48 (a) (first information), and possession of a sawed-off shotgun in violation of General Statutes § 53a-211 (a) (second information). The charges subsequently were joined, and the petitioner's case was tried in conjunction with those of codefendants Keith Johnson and Duane Saunders. Following trial, the jury found the petitioner guilty on all counts. The court thereafter sentenced the petitioner to a total effective term of twenty-eight years incarceration.

In an amended petition for a writ of habeas corpus, the petitioner claimed that (1) his confinement was illegal for a variety of reasons, (2) his trial counsel provided him ineffective assistance, (3) his appellate counsel provided him ineffective assistance and (4) he

was innocent of the crimes of which he was convicted. The latter two claims were withdrawn with prejudice at his habeas trial. The only witness called by the petitioner at that trial was attorney Margaret Levy, his trial counsel. Although the respondent, the commissioner of correction, introduced documentary evidence, she presented no witnesses. In its memorandum of decision, the court concluded that the petitioner had not met his burden of proving ineffective assistance of counsel and that his challenges to the legality of his confinement lacked merit. Accordingly, the court denied the petition.[2] From that judgment, the petitioner appeals.

## I

The petitioner first assails the legality of his confinement. He presents a number of claims in this regard, all of which the court concluded were without merit.[3] Specifically, the petitioner alleges that (1) he was illegally convicted of conspiracy to commit robbery in the first degree as an accessory, (2) his conviction violates Wharton's rule, (3) his conviction of robbery in the first degree as an accessory and conspiracy to commit robbery in the first degree violates the prohibition against double jeopardy, (4) he was illegally convicted of possession of a shotgun as an accessory, (5) his

[2] The court subsequently granted the petition for certification to appeal.

[3] After concluding that the petitioner's challenges to the legality of his confinement lacked merit, the habeas court noted that the petitioner had filed a motion with the trial court to challenge the legality of his sentence, which was denied. The court then stated that the petitioner would be "estopped from raising those same issues" in the habeas proceeding. We disagree with the petitioner that the fact that the court used the word "estopped" necessarily means that it applied the estoppel doctrine in the present case. Rather, the reference merely was passing commentary unnecessary to its holding. Absent from the court's memorandum of decision is any finding of estoppel or analysis thereof. Despite that absence, the petitioner did not file a motion for articulation pursuant to Practice Book § 66-5, thereby rendering the record inadequate to review that issue. See, e.g., *King v. Commissioner of Correction*, 73 Conn. App. 600, 603, 808 A.2d 1166 (2002), cert. denied, 262 Conn. 931, 815 A.2d 133 (2003).

consecutive sentences for robbery in the first degree as an accessory and for conspiracy to commit robbery in the first degree are illegal and (6) his sentence on incorrect docket numbers constituted a substantive defect.[4] His claims are unavailing.

Preliminary, we note the applicable standard of review. "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 566, 941 A.2d 248 (2008). To the extent that factual findings are challenged, "this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . ." (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 424, 876 A.2d 1277, cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005), cert. denied sub nom. *Santiago* v. *Lantz*, 547 U.S. 1007, 126 S. Ct. 1472, 164 L. Ed. 2d 254 (2006). "[A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 742, 937 A.2d 656 (2007).

A

The petitioner first claims that he was illegally convicted of both robbery in the first degree as an accessory and conspiracy to commit robbery in the first degree

[4] In her return, the respondent did not raise the affirmative defense of procedural default.

as an accessory. To the contrary, the court found that the petitioner was not convicted of conspiracy to commit robbery in the first degree as an accessory. Rather, it stated in its memorandum of decision that the petitioner had been convicted of conspiracy to commit robbery in the first degree under §§ 53a-134 (a) (2) and 53a-48 (a).[5] That finding was supported by the testimony of Levy, who stated that the petitioner had not been convicted of conspiracy as an accessory because the jury never was charged that it could find him guilty of conspiracy as an accessory.[6] The petitioner offered no evidence to contradict that testimony. As such, we cannot conclude that the court's finding was clearly erroneous.

## B

The petitioner next contends that his conviction violates Wharton's rule. "Wharton's rule provides that [a]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to *necessarily require* the participation of two persons for its commission. . . . The United States Supreme Court has explained the reason for barring convictions of both conspiracy and the crime underlying the conspiracy when the rule applies. Wharton's rule applies only to offenses that *require* concerted criminal activity, a plurality of criminal agents. In such cases, a closer relationship exists between the

---

[5] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[6] The petitioner did not introduce into evidence the transcript of the trial court's September 24, 1990 jury charge.

conspiracy and the substantive offense because *both* require collective criminal activity." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Baker*, 195 Conn. 598, 607, 489 A.2d 1041 (1985).

In *Baker*, the defendant claimed that he could not be convicted of both a substantive offense as an accessory and conspiracy to commit the substantive offense. Our Supreme Court disagreed: "In arguing for the applicability of Wharton's rule, the defendant states that he was not charged with committing the substantive offense of arson in either count. He [was] charged as an accessory in the first count and as a conspirator in the second count. The defendant's mischaracterization of the charges leads him to an erroneous result. There is no such crime as being an accessory; the defendant was charged with the substantive offense of arson. The accessory statute merely provides alternate means by which a substantive crime may be committed. The substantive crime of which the defendant was convicted, arson in the second degree, does not *require* the participation of two persons for its commission or any type of collective criminal activity. The fact that, as in this instance, two persons were involved in the crime does not implicate Wharton's rule." (Emphasis in original; internal quotation marks omitted.) Id., 607–608.

That reasoning applies with equal force to the present case. Although the petitioner was charged with robbery in the first degree as an accessory, that fact does not require reversal of his accompaning conviction of conspiracy to commit robbery in the first degree. The substantive crime of robbery in the first degree plainly does not require the participation of two persons for its commission. As a result, the petitioner's claim fails.

C

The petitioner claims that his conviction of robbery in the first degree as an accessory and conspiracy to

commit robbery in the first degree violates the prohibition against double jeopardy. In *State* v. *Fudge*, 20 Conn. App. 665, 569 A.2d 1145, cert. denied, 214 Conn. 807, 573 A.2d 321 (1990), this court squarely rejected that precise claim.[7] We stated: "The defendant's claim implicates that strand of double jeopardy jurisprudence that protects against multiple punishments for the same offense. . . . The defendant's double jeopardy rights are violated only if the charges arise out of the same act or transaction and the crimes charged are in fact the same offense. . . . Our analysis here focuses on the second prong. It is fundamental constitutional law that where the charges arise out of the same transaction, they are not the same offense for double jeopardy purposes if each statute requires proof of a fact that the other does not. . . . The conspiracy charge required proof of an agreement, and the accessory to robbery charge did not. The accessory to robbery charge required proof of an actual larceny, and the conspiracy charge did not. The defendant tries to surmount this obstacle by arguing that participation in a robbery as an accessory necessarily requires an agreement between the participants. This argument is flawed. One element of the separate and distinct crime of conspiracy is an unlawful agreement. There is, however, no such crime as being an accessory. . . . The defendant is charged with committing one substantive offense; [t]he accessory statute merely provides alternate means by which a substantive crime may be committed. . . . It has long been the law of this state that there is no practical distinction in being labelled an accessory or a principal for the purpose of determining criminal responsibility. . . . Thus, the substantive crime with

---

[7] The petitioner neither cited nor discussed the *Fudge* decision in his principal brief. When the respondent in her brief argued that *Fudge* was controlling precedent, the petitioner did not respond in any manner by way of a reply brief. Furthermore, counsel for the petitioner did not address that precedent or withdraw his claim at oral argument.

which the defendant was charged was robbery, and an agreement with another person is not an element of robbery." (Citations omitted; internal quotation marks omitted.) Id., 669–70. In light of that controlling precedent, we agree with the court that the petitioner's claim is meritless.

## D

Likewise, the petitioner's contention that his consecutive sentences for robbery in the first degree as an accessory and for conspiracy to commit robbery in the first degree are illegal also lacks merit. He claims that both charges stem from the same event, thereby implicating the prohibition against double jeopardy. Because accessorial liability is not a substantive offense; see id.; that argument is futile.

Furthermore, although he cites *State* v. *Chicano*, 216 Conn. 699, 704–705, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), and states that "where the lesser offense results in additional punishment, the sentence will not stand," he does not identify any offense that was a lesser included offense of another charge of which he was convicted. He further offers no analysis of that claim. As we frequently have observed, "[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Citation omitted; internal quotation marks omitted.) *Shore* v. *Haverson Architecture & Design, P.C.*, 92 Conn. App. 469, 479, 886 A.2d 837 (2005), cert. denied, 277 Conn. 907, 894 A.2d 988 (2006). Accordingly, we decline to address that claim.

E

The petitioner also alleges that he was illegally convicted of possession of a shotgun as an accessory. Again, his claim is contrary to the finding of the court, which stated in its memorandum of decision that the petitioner was convicted under § 53a-211 (a).[8] At the habeas trial, the respondent introduced into evidence the long form information on the possession charge, the criminal docket sheet and the judgment file on the possession charge, none of which references § 53a-8[9] or the petitioner's having been charged or convicted as an accessory. Moreover, Levy testified that the only evidence at trial regarding possession was that the petitioner had had the shotgun at all times. In light of the foregoing, the finding that the petitioner was convicted of possession of a sawed-off shotgun, rather than possession of a sawed-off shotgun as an accessory, is not clearly erroneous.

F

The petitioner claims that his sentence on allegedly incorrect docket numbers constituted a substantive defect.[10] He premises his argument on the fact that at the beginning of trial, the courtroom clerk incorrectly

---

[8] General Statutes § 53a-211 (a) provides in relevant part: "A person is guilty of possession of a sawed-off shotgun . . . when he owns, controls or possesses any sawed-off shotgun that has a barrel of less than eighteen inches or an overall length of less than twenty-six inches . . . ."

[9] General Statutes § 53a-8 (a) provides in relevant part: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . ."

[10] Although the petitioner asserts that his sentence on allegedly incorrect docket numbers also violates his rights to due process and to confrontation, he has offered no analysis of those assertions. Such cursory treatment without substantive analysis or legal citation does not constitute adequate briefing, and we deem those issues abandoned. See *Shore* v. *Haverson Architecture & Design, P.C.*, supra, 92 Conn. App. 479.

referenced the five digit part A docket numbers when reading the informations to the jury. As a result, the petitioner posits that he "had no way of knowing exactly what he was being charged with or that the weapons charge was from a separate incident" and alleges that "there was confusion about which defendants did what and which defendants were being charged with what crimes."

That argument is undermined by Levy's testimony that she was aware of the three charges filed against the petitioner, that the charges arose from two files and that the charges were to be tried together. Levy never indicated that the clerk's incorrect references to the docket numbers confused either her or the petitioner. Furthermore, the respondent introduced into evidence the long form information on the possession charge, the criminal docket sheet and the judgment files, all of which contained the correct docket numbers. Finally, and most significantly, the petitioner presented no evidence whatsoever indicating that he lacked notice of the charges against him or that the clerk's incorrect reference to the docket numbers confused him. Faced with that dearth of evidence, we agree that the petitioner's claim is without merit.

II

The petitioner also argues that he was denied effective assistance of counsel. He claims that his trial counsel rendered ineffective assistance by failing to object to the joinder of the charges contained in the first and second informations.[11] We do not agree.

---

[11] In his appellate brief, the petitioner additionally alleged that trial counsel rendered ineffective assistance by (1) failing "to keep the charging dockets separate and make certain [that he] was tried on the correct information," (2) failing "to correct an illegal sentence," and (3) "allowing for joinder with his codefendants and allowing the trial to proceed as a joint trial when one of the codefendants [pleaded] guilty." Because the petitioner again has not provided any analysis of those particular claims, we deem them abandoned. See *Shore* v. *Haverson Architecture & Design, P.C.*, supra, 92 Conn. App. 479.

"The standard of review for a challenge to a court's denial of a petition for a writ of habeas corpus based on a claim of ineffective assistance of counsel is well settled. The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . .

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . In *Strickland* v. *Washington*, [466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel during criminal proceedings: the defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness . . . and (2) that defense counsel's deficient performance prejudiced the defense. . . . The first part requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. . . . In determining whether such a showing has been made, judicial scrutiny of counsel's performance must be highly deferential. . . . The reviewing court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct. . . . The second part requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citations omitted; internal quotation marks omitted.) *Calabrese* v. *Commissioner of Correction*, 88 Conn. App. 144, 150–51, 868 A.2d 787, cert. denied, 273 Conn. 936, 875 A.2d 543 (2005). With that standard in mind, we consider the petitioner's specific claim.

The petitioner claims that trial counsel rendered ineffective assistance by failing to object to the joinder of the charges contained in the first and second informations. Under Connecticut law, "[w]henever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise." General Statutes § 54-57; see also Practice Book § 41-19. Our Supreme Court "consistently has recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion . . . will not second guess the considered judgment of the trial court as to the joinder or severance of two or more charges." (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 521, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007). Further, "[w]here evidence of one incident can be admitted at the trial of the other, separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial." (Internal quotation marks omitted.) Id., 520.

The petitioner argues that the charge of possession of a sawed-off shotgun should have been tried separately from the robbery and conspiracy charges. He maintains that "[i]f the cases were separate and no weapon was produced [at the trial on the robbery and conspiracy charges], given that the arrest happened within [one] hour of the robbery, it is likely the jury would have concluded that the state had not shown that a deadly weapon was used. Otherwise, [the police] would have recovered one from the robbers."

The infirmity in that argument is the fact that absent joinder of the charges, the shotgun would have been admissible in the robbery and conspiracy case. "[A]ll that is required before a weapon may be introduced into evidence is a sufficient foundation demonstrating circumstances justifying an inference of the likelihood that the weapon was used in the course of the crime charged. . . . The [state] is not compelled to establish that the particular weapon to be introduced was the actual weapon used in the commission of the crime." (Internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 551, 673 A.2d 1117 (1996); see also *State* v. *Piskorski*, 177 Conn. 677, 696, 419 A.2d 866 (in light of evidence connecting it to case, shotgun possessed by defendant admissible despite fact that state did not scientifically establish it was used in commission of crimes), cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

In the present case, the court explained how the circumstances justified an inference of the likelihood that the weapon was used in the course of the crime charged: "The petitioner seems to be advancing the theory that evidence used to prove one crime cannot be used to prove another. Unfortunately, this simply is not true. It is true that the shotgun was recovered from the person of the petitioner and that this formed the basis for the criminal possession of a shotgun charge.

Nevertheless, the evidence was such that the shotgun was clearly admissible against the petitioner in the robbery case as well. Indeed, any attempt by the petitioner's trial defense counsel to try and limit the use of the shotgun would have been singularly unsuccessful. There was testimony that a shotgun was used during the robbery, testimony describing the shotgun by the victim, and the petitioner was apprehended a very short time after the robbery in possession of a shotgun that matched the victim's description. While there is, of course, a remote possibility that this weapon was not one and the same as used in the robbery, there was more than enough circumstantial evidence to permit the jury to draw the logical conclusion that [it] apparently did."

In addition, the respondent relies on § 4-5 (b) of the Connecticut Code of Evidence as a further basis for the admissibility of the shotgun at trial. Section 4-5 (b) provides in relevant part that "[e]vidence of other crimes, wrongs or acts of a person is admissible . . . to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." Under that section, admission of the shotgun into evidence at the trial on the robbery and conspiracy charges likely would corroborate the victim's testimony and would be probative of the elements of the other charges, namely, being armed with a deadly weapon.

When counsel for the petitioner at the habeas trial suggested that the shotgun would not have been before the jury had joinder of the charges not occurred, Levy responded: "[C]ertainly, under any circumstances, the testimony about the robbery of [the victim] would have included details, specific testimony regarding a shotgun, which was in the same condition with what appeared to have been duct tape, the way it was

described by [the victim], gray tape around the base of the weapon. So, I think it would have been very clear that a shotgun, and in fact, the same shotgun [as later found on the petitioner] had been involved." For that reason, Levy testified that she did not object to the joinder of the charges against the petitioner because she "didn't believe that [it] was legally supportable or that there was a chance that [it] would be granted." Because the petitioner did not "introduce any proof into this habeas case that would permit the court to conclude that [Levy] had any viable way" of preventing a joinder of the charges, the court concluded that the petitioner failed to prove deficient performance on her part. On our review of the record, we agree with that determination and, therefore, do not consider the question of resulting prejudice. See *Strickland* v. *Washington*, supra, 466 U.S. 697 (reviewing court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one"); *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 428–29, 589 A.2d 1214 (1991) (reviewing court can find against petitioner on either prong of *Strickland*).

The judgment is affirmed.

In this opinion the other judges concurred.